United States District Court
Southern District of Texas
FILED

MAR 07 2000

Michael N. Milby, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| KOCH PIPELINE COMPANY, L.P. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. C-00-100 |
| | § | |
| WENDEL & ASSOCIATES, INC. | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF THE COURT:

Koch Pipeline Company, L.P. ("Koch"), Plaintiff, files this Plaintiff's Original Complaint naming as Defendant, Wendel & Associates, Inc., ("Wendel") and would respectfully show the Court the following:

#### A. Parties

1. Plaintiff, Koch Pipeline Company, L.P., ("Koch") is a Delaware limited partnership with its principal place of business at 4111 East 37th Street North, Wichita, Kansas 67220. At all times relevant herein, Koch is and was authorized to do business in the State of Texas.

2. Defendant, Wendel & Associates, Inc., ("Wendell") is a Texas corporation, which may be served by delivery to its registered agent for process, G.M. Wendel, 545 N. Upper Broadway, Suite 603, Corpus Christi, TX 78476.

#### B. Jurisdiction

3. This Court has subject matter jurisdiction under 28 U.S.C. §1332, as the parties are citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

### C. Venue

4. Pursuant to 28 U.S.C.§1391(a), the venue of this action is properly placed in the Southern District of Texas, Corpus Christi Division, because a substantial part of the events or omissions giving rise to the basis of Plaintiff's claims arose in this Division.

### D. Facts

5. On or about May 3, 1994, Koch entered into an Intermittent Services Agreement ("Agreement") with Defendant Wendel for Defendant Wendel to perform certain work from time to time as an independent contractor for Koch. The Agreement is attached hereto as Exhibit A and incorporated herein by reference.

6. Pursuant to the Agreement, on or about July 16, 1998, Mr. Robert Couser, while acting in the scope and course of his duties for Defendant Wendel, replaced an old rectifier unit with a new rectifier unit, number DTF-1, at "Duval Station" on Koch's crude oil pipeline system near Freer, Duval County, Texas.

7. Rectifier units are purchased and installed along Koch's crude oil pipeline facilities to prevent both the corrosion of those facilities and any resulting leak or spill of any crude oil from the pipeline system. Electrical current from rectifiers is vital for that protection against corrosion.

8. On or about July 16, 1998, Mr. Couser improperly connected the wires for the newly installed rectifier. Because of the negligent wiring by Mr. Couser, not only did the rectifier fail to protect the applicable pipeline facilities from deterioration, but that pipeline wall's corrosive deterioration was geometrically accelerated by the reverse polarity and the 76.4 amp discharge.

9.  Eighty-four days of reverse polarity caused the loss of much of the pipe metal as well as coating damage to Koch's Duval Station and nearby pipelines before the negligent rectifier wiring was discovered and reconnected correctly by Koch. However, by that time the damage was so great that a crude oil leak ultimately occurred and was discovered on or about October 30, 1998, within 500 feet of the DTF-1 rectifier. Leak pits were clearly caused by the electrical charges from the rectifier.

10. The crude oil leak and all damages resulting therefrom were the direct and proximate result of the improper connection of wires by the employee of Wendel, Mr. Couser, on the applicable the rectifier unit.

11. A further cause of the damages sustained by Koch was Defendant Wendel's failure to either hire an adequately trained employee to perform the wiring of the DTF-1 rectifier or to train its employee after hiring, so that the employee could competently perform the work required for the reasonable activation of the applicable rectifier unit.

12. The acts and/or omissions of Wendel breached both the express terms of the Agreement and the implied warranty of good and workmanlike performance.

13. As a direct result of the unreasonable acts and omissions, as well as the breaches of the Agreement and the implied warranty by Wendel and its duly authorized employees, Koch has sustained and will continue to sustain substantial damages in the future. These damages include, but are not limited to, costs of investigation, costs of pipeline repair (both past and future), expense of "smart pig" tools run through the applicable pipeline for diagnostic tests, costs of environmental remediation of the spill spite as required by the Texas

Railroad Commission. Total costs for repair, investigation and, remediation (projected over ten years) are in excess of $2.5 million.

14. Koch made proper demand upon Defendant Wendel for payment of the amounts sought herein. Koch is entitled to recover reasonable attorneys' fees and related costs expended in its effort to recover the amount sought herein.

### E. Damages

15. Koch seeks:

    (a)    damages;

    (b)    recovery of attorney's fees in an amount deemed reasonable by the Court;

    (c)    recovery of expert witness fees;

    (d)    recovery of all costs of Court; and

    (e)    recovery of pre-judgment and post-judgment interest.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Koch Pipeline Company, L.P., prays that citation be issued and that Defendant Wendell & Associates, Inc., be served and required to answer the claims stated herein, and upon final hearing, judgment be entered for Koch Pipeline Company, L.P., for the relief requested above, and for such other and further relief to which it may show itself justly entitled.

4

Respectfully submitted,

*Robert Pinnell by Tom Harrison*
Robert E. Pinnell
Kansas State Bar No. 15270
Federal I.D. No. 19419
Of Counsel
Koch Industries, Inc.
Legal Department
4111 East 37th Street North
Wichita, Kansas 67220
Phone 316-828-8522
Fax 316-828-4780


*Gene Ward by Tom Harrison*
Gene R. Ward
Texas State Bar No. 2084150
Federal I.D. No. 7645
Attorney in Charge
Tom M. Harrison
Texas State Bar No.09122300
Federal I.D. No: 1891
Hornblower, Manning & Ward
Professional Corporation
P.O. Box 2728
Corpus Christi, TX  78403-2728
Phone: (361) 888-8041
Fax:    (361) 888-8222


ATTORNEYS FOR PLAINTIFF,
KOCH PIPELINE COMPANY, L.P.

## INTERMITTENT SERVICES AGREEMENT

Date __05/03/94__   Contractor __Wendel & Associates, Inc.__

Area __South Texas Division-KTOS__

**PARTIES** Koch Gatherings Systems Inc., Koch Gateway Pipeline Co., Koch Pipeline Co., Koch Refining Co., and Koch Service Inc.

1. It is hereby agreed between _____ (referred to as "Company") and __Wendel & Associates, Inc.__ (referred to as "Contractor"), whose business address is __P.O. Box 1596, Corpus Christi, Texas 78403__ that Contractor will, as an independent contractor, furnish all necessary supervision, labor, materials and equipment (other than specified labor, materials and equipment furnished by Company) and shall perform work for Company as requested by Company from time to time during the term of this agreement in conformity with the terms of this agreement.

### Special Conditions:

(if applicable) _____

_____
_____
_____
_____
_____

Contractor shall be compensated in accordance with the attached rates marked as Exhibit "A". The rates shall include without limitation, all applicable taxes imposed by federal, state or other governments or bodies having jurisdiction.

### BILLING AND PAYMENT

2. Contractor shall submit to Company's authorized representatives an itemized statement detailing charges for labor and equipment including hours, dates, the hourly charge for the labor or equipment and any charge for materials at the end of each __Project__ (name desired billing period - e.g., week, month or thirty days) during which work is performed. Contractor shall furnish upon demand any records relating to the statement prior to or after payment by Company.

3. Final payment shall be made within thirty days of the date of receipt by Company of the statement described in Paragraph 2 of this agreement. Company reserves the right to withhold payment until completion of the work and its acceptance by Company or until Contractor furnishes proof satisfactory to Company that all bills for materials and labor covering the work have been fully paid by Contractor, and that the premises upon which the work is done and any structure built, improved or added to are not subject to any material or labor liens or claims of liens. Contractor and/or any subcontractor shall promptly and satisfactorily settle all liens and claims for labor performed and supplies or material furnished in connection with the work; and in the event Contractor fails or refuses to promptly and satisfactorily settle any such liens or claims, Company shall, after notifying Contractor in writing, have the right to settle such claims for the account of Contractor and deduct the amount thereof from amounts payable to Contractor. Payments made under this agreement shall not constitute full or partial acceptance of the work or any part of the work by Company.

### PERFORMANCE OF WORK

4. Contractor shall rely solely upon Contractor's own examination and investigation of the surface and subsurface conditions at the site, and all local and general conditions which may affect performance of the work.

5. Unless otherwise specified, Contractor shall secure all permits and licenses necessary to the performance of the work, shall pay all fees and make all deposits pertaining there to, and shall at Contractor's expense furnish all bonds required to perform the work, and shall submit proof thereof to Company.

6. Contractor shall perform the work:
   a. In a workmanlike manner using qualified, efficient and careful workers;
   b. In accord with all plans, drawings and specifications;
   c. In compliance with all applicable federal, state, local and Company safety rules and regulations;
   d. In a manner to protect the work, the environment, Company's property and the property and persons of others from loss, damage or injury of any type;
   e. So as not to interfere with the operations of others on the premises; and,
   f. Under the supervision of an employee of Contractor.

An employee supplied by Contractor without supervision by Contractor and who is under the exclusive direction and control of Company shall be considered a borrowed servant. In all other cases the employee shall be considered an employee of an independent contractor. Contractor's duties to defend, indemnify, protect and hold harmless Company under Paragraph 12 of this agreement shall continue regardless of the characterization of an employee as a borrowed servant or the employee of an independent contractor.

7. Company may maintain such representatives as it deems necessary on the work site for the purpose of inspecting, testing and insuring the satisfactory completion of the work. Company may inspect the work at any time during the progress of the work, and Contractor shall provide reasonable facilities for such inspection. If any applicable statute, regulation or order requires any part of the work to be specially tested or approved, Contractor shall give Company reasonable notice of the time and place of such testing and inspection. Company may require Contractor to correct defective work or Company may have the work corrected by others, and, in either event, Contractor shall bear the cost of such correction.

8. Unless otherwise specified, all materials shall be new and workmanship shall be of good quality. No substitutions of materials from that specified in the plans and specifications in this agreement shall be permitted unless approval is given by Company in writing.

9. Contractor guarantees the work to be performed hereunder against defects in workmanship and material which shall appear within one year following final acceptance of the work by Company, and Contractor shall promptly remedy all such defects. Contractor shall arrange for the extensions, to Company, of all additional warranties by suppliers of goods or services which are consistent with or extend or expand the terms of the above-described warranty of Contractor.

10. Contractor and its employees, agents and subcontractors shall comply with all applicable laws, regulations, ordinances and other rules of federal, state and local government and political subdivisions, and of any other duly constituted authority having jurisdiction.

11. Contractor shall be responsible for, and hereby assumes all liability whether insured or self-insured, for loss or destruction of or physical damage to the following:
   a. All tools, machinery, equipment and appliances which are owned by Contractor or loaned or leased by Contractor by others than Company and which are not to be incorporated into the completed work; and,

**EXHIBIT A**

EXHIBIT A

h. All personal property of Contractor's employees; whether or not such loss, destruction or damage is caused by, arises out of, or is in any way connected with the negligence of Company, its employees or agent.

## INDEMNITY AND INSURANCE

12. Contractor shall defend, protect, indemnify and save Company, Koch Industries, Inc. and any company of which Koch Industries, Inc. owns or controls fifty percent or more of the shares entitled to vote at a general election of directors (collectively referred to for purposes of this Paragraph 12 as "Company") harmless from and against all claims, demands, lawsuits, causes of action, penalties, fines, administrative law actions and orders, expenses (including but not limited to attorney's fees) and costs of every kind and character arising out of or in any way incident to any of the work performed by Contractor, its subcontractors or the employees of either, on account of personal injuries, death, damage to property or damage to the environment, regardless of whether such harm is to Contractor, Company, the employees or officers of either or any other person or entity. The duty to defend, protect, indemnify and save Company harmless referred to in the preceding sentence shall include, but not be limited to, claims, demands, lawsuits, penalties, fines, administrative law actions and orders, costs, expenses and causes of action which result from the comparative, concurrent or contributing negligence of any person or entity including, but not limited to, Company, its agents, employees or officers, except Contractor shall not be liable for loss or damage resulting from the sole (100%) negligence of Company. Contractor further agrees to pay Company for damages to Company's property and to indemnify, defend and hold it harmless against the payment of any and all taxes, penalties, fines, interest, liens or indebtedness or claims against Company's property or for work performed, or measured by the work performed, growing out of or incident to Contractor's operations under this contract including, but not limited to taxes, penalties, fines, interest, liens or encumbrances which result from the concurrent or contributing negligence of any person or entity, which may include Company, its agents, employees or officers.

13. Contractor shall maintain at its own cost and expense such insurance as will protect it from all claims for damages to persons and to property which may arise from any operations under this contract or any subcontracts related to this contract. Contractor shall maintain during the entire term of this Contract insurance policies within minimum limits of coverage all as set forth on Exhibit B which is made a part hereof by reference. Prior to commencing work Contractor shall require its insurer or insurance agent to supply Company a certificate of insurance in the form as set forth on Exhibit C. Such insurance shall name Company as an additional insured.

## GENERAL PROVISIONS

14. This agreement may not be assigned in whole or in part by Contractor without the prior written consent of Company, nor shall work under the contract be assigned to a subcontractor without the prior written consent of Company.

15. No amendment to this agreement shall be valid unless made in writing and signed by authorized representatives of both parties.

16. Company's right to require strict performance of Contractor's obligations shall not be affected in any way by prior waiver, forbearance or other course of dealing.

17. This agreement comprises the entire agreement between Company and Contractor, and there are no agreements, understandings, conditions, or representations, oral or written, expressed or implied, which are not merged into this agreement or superseded by it.

18. If Contractor should be adjudged a bankrupt or it should make a general assignment for the benefit of creditors or if a receiver should be appointed for Contractor or it should refuse or fail to supply competent supervision or enough properly skilled people or proper material or disregard laws, rules or regulations applicable to the work, or otherwise violate any provision of this agreement, then Company shall have the right to treat such as a breach of this agreement and may upon the giving of written notice terminate this agreement, terminate employment of Contractor, and take possession of the premises, all materials, tools, equipment supplies, and appliances of any type and finish the work by whatever method it may deem appropriate.

19. Company may require Contractor to furnish a surety bond in the full amount of and guaranteeing faithful performance of this agreement. Such bond shall be written on a form prescribed or approved by Company and shall be purchased from a source approved by Company.

20. Company shall have the right, at any reasonable time and from time to time, to audit any and all records, documents and other data pertaining to this agreement. Contractor shall cooperate in furnishing to Company all such records, documents and other data in connection with any such audit.

21. Company does not guaranty an offer of work to Contractor during the term of this agreement. Company and Contractor agree, however, that any work offered by Company to Contractor and accepted by Contractor during the term of this agreement will be performed under the terms of this agreement.

22. Contractor shall comply with and be subject to the most recent Substance Abuse Policy issued by Koch Industries, Inc. All employees of Contractor shall be subject to drug testing when on the premises of Company. In addition to the foregoing requirements, should Contractor perform services related to facilities regulated by the United States Department of Transportation, Contractor shall have developed and implemented, or have contracted with an organization that has developed and implemented, substance abuse policies in compliance with 41 U.S.C. 701, et seq., 49 C.F.R. Part 199 and 49 C.F.R. Part 40. Contractor shall provide Company with documentation demonstrating compliance with such laws upon the request of Company.

23. Contractor warrants and represents that all of Contractor's employees have received all safety training required by law for employees working in an environment in which they may come in contact with crude oil, natural gas, natural gas liquids, refined products or hazardous materials. Contractor agrees to permit Company to inspect Contractor's records in order to assure compliance with this Paragraph 23.

## TERM

24. This agreement shall be effective as of the date above written and shall continue for a one year period following that date. At the end of the initial one year period the agreement shall continue until replaced by a subsequent agreement or otherwise revoked by written notice by either party.

So agreed on the date below written.

COMPANY

By _____

Title _____

Date 6-1-94

CONTRACTOR

By _____

Title President

Date 05/03/94

WITNESS

By _____

Date _____

By Shelly Gengenbach

Date 5/03/94

Rev. 4/92 VP

**EXHIBIT A**